IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAFAEL MANTESSO,

    Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

    Defendants.

Civil Action No.: 1:20-cv-00699

# COMPLAINT

Plaintiff, Rafael Mantesso, by his undersigned counsel, hereby complains of the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and for his Complaint hereby alleges as follows:

## INTRODUCTION

1. This action has been filed by Plaintiff to combat online copyright infringers who trade upon Plaintiff's reputation and goodwill and valuable copyright by selling and/or offering for sale products in connection with Plaintiff's famous art works. JIMMY THE BULL is a worldwide social media sensation featuring the beloved bull terrier of Rafael Mantesso, Jimmy Choo. In addition, the defendants are selling unauthorized products that are based on and derived from the copyrighted subject matter of JIMMY THE BULL's Instagram feed and literary works hereinafter referred to as the "JIMMY THE BULL Products." The tremendous notoriety and worldwide recognition of the JIMMY THE BULL copyright is due to the originality of the unique works produced by Raphael Mantesso. JIMMY THE BULL photography, combined with whimsical hand drawn elements, have captured the world's attention. The Instagram feed became an immediate

worldwide sensation followed by the book entitled "A Dog Named Jimmy" featuring a collection of tongue-in-cheek imagery:



http://jimmythebull.com/

2.  Plaintiff is the owner of the United States Copyright Registration No. VA 2-006-670, that covers the "JIMMY THE BULL Images". The Registration is valid, subsisting and in full force and effect. A true and correct copy of the Registrations is attached hereto as Exhibit 1.

In an effort to illegally profit from the creative content of the JIMMY THE BULL Images and the JIMMY THE BULL copyrighted works, Defendants have created numerous Defendant Internet Stores and design them to appear to be selling authorized JIMMY THE BULL Products. Below are examples of such unauthorized products blatantly being sold:



3. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities as well as the full scope and interworking of their illegal operations. Plaintiff is forced to file this action to combat Defendants' infringement. Plaintiff's investigation has discovered that one of the named defendants in the present action is a factory that produces thousands of products a month that appear to be supplied to the rest of the counterfeiting ring which are unauthorized JIMMY THE BULL products:

4. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, loss of control over the creative content and copyright as a result of Defendants' actions and seek injunctive and monetary relief.

## JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101, et seq., 15 U.S.C. § 1125(a)and 815 ILCS § 510, et seq.. This Court has jurisdiction over the claims in this action that arises under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant online marketplace accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing infringing versions of Plaintiff's federally registered copyright. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products that infringe Plaintiff's registered copyright. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused substantial injury in the State of Illinois.

## THE PLAINTIFF

8.      Plaintiff, Rafael Mantesso, is the owner of the Copyright Registration that protects the creative content of the JIMMY THE BULL Images. Rafael Mantesso has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the JIMMY THE BULL copyrighted works. As a result, products associated with the JIMMY THE BULL copyrighted works are recognized and exclusively associated by consumers, the public, and the trade as being products authorized by Rafael Mantesso.

## THE DEFENDANTS

9.      Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants

conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell illegal JIMMY THE BULL Products to consumers within the United States, including Illinois and in this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

10. The success of the JIMMY THE BULL Images has resulted in significant copying of the creative content protected by the Images' copyrights and infringement of Plaintiff's JIMMY THE BULL copyright works. Plaintiff has identified numerous marketplace listings on eCommerce platforms such as, but not limited to, eBay, WISH.com, including the Defendant Internet Stores, which were offering for sale, selling, and importing illegal JIMMY THE BULL Products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendant Internet Stores. ECommerce sales, including eCommerce Internet stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. Exhibit 2, *Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection* ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and pirated products also pose risks to human health and safety, erode U.S. economic competitiveness and diminish the reputations and trustworthiness of U.S. products and producers. Exhibit 3, Excerpts from *Combating Trafficking in Counterfeit and Pirated Goods*, available at

https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf (Jan. 24, 2020). The OECD reports international trade in counterfeit and pirated goods amounted to as much as $509 billion in 2016. *Id.* Data collected by CBP between 2000 and 2018 shows that seizures of infringing goods at U.S. boarders, much of it trafficked through e-commerce, has increased ten-fold. *Id.*

11. Counterfeiting rings are able to take advantage of the anonymity provided by the Internet. For example, marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." Exhibit 3, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, NW. J. INT'L L. & BUS. (forthcoming 2020), at 24. *See also, Combating Trafficking in Counterfeit and Pirated Goods*, at page 11 ("Third-party online marketplaces can quickly and easily establish attractive 'store-fronts' to compete with legitimate businesses. On some platforms, little identifying information is necessary to begin selling.) Further, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." Exhibit 4 at 25. This lack of meaningful regulation allows the Defendants to garner sales from Illinois residents by setting up and operating eCommerce Internet stores that target United States consumers using one or more seller aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold counterfeit products to residents of Illinois.

12. By shrouding their counterfeiting operation in the anonymity, it allows the defendants to operate as a ring of counterfeiters operating on e-Commerce sites such as Amazon, eBay and, Alibaba. E-Commerce giant Alibaba has even formed a special task force to root out

illegal counterfeiting rings. According to Alibaba, telltale indications of a counterfeiting ring and its affiliated manufacturing source in action are the use of fictitious identities that are adopted to provide the counterfeiting ring with the ability to play whack-a-mole with authorities. ("After we clean up online shops selling counterfeits, the counterfeiters usually change their identities and places of dispatch, using more convert means to continue selling online," *See* Xinhua, *Fighting China's counterfeits in the online era,* China Daily (Sept. 19, 2017), available at www.chinadaily.com.cn/business/2017-09/19/content_32200290.htm ; "Most counterfeiting dens are hidden and well-organized. For example, we encountered a village producing counterfeits. The villagers installed cameras everywhere and when they saw outsiders entering, they became vigilant and even threatened us," Id. "In August, with evidence from Alibaba, police in Loudi, Hunan province, broke up a ring producing and selling counterfeit weight-loss drugs, with a sales network in more than 20 provinces. Total trade by the ring exceeded 100 million yuan ($15.15 million). *Id.*)

13.     Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting ring are present in the instant action. For example, the online storefront names set forth in Schedule A employ no normal business nomenclature that can be researched to discover the true owner. Instead, the seller names appear to be made up aliases. Thus, the Defendant Internet Stores are using fake online storefronts designed to appear to be selling genuine Plaintiff products, while selling inferior imitations of Plaintiff's products.

14.     Another telltale sign of a mutually cooperative counterfeiting ring in operation is that, on information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling counterfeit products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down. *See*

7

*also, Combating Trafficking in Counterfeit and Pirated Goods*, at page 11 ("A counterfeiter seeking to distribute fake products will typically set up one or more accounts on online third-party marketplaces. The ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property holders. Rapid proliferation also allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked.") *see also, Id.,* at page 22 "In some cases, counterfeiters hedge against the risk of being caught and their website taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.. . . little identifying information is necessary for a counterfeiter to begin selling. In the absence of full transparency counterfeiters can quickly and easily move to a new virtual store if their original third-party marketplace is taken down." *See also, Id.*, at page 39 ". . . the party that appear as the seller on the invoice and the business profile that appears on the platform to be the seller, may not always be the same. This lack of transparency allows one business to have many different profiles that can appear unrelated."

15. On information and belief, the level of cooperation between the Defendants is so significant that they are in constant communication with each other and regularly participate in all kinds of online private chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

16. Upon information and belief, Defendants facilitate sales by concurrently employing and benefitting from substantially similar advertising and marketing strategies as well as by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine JIMMY THE BULL Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S.

8

dollars via credit cards, Western Union and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such unauthorized sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. Plaintiff has not licensed or authorized Defendants to use the JIMMY THE BULL Images and products derived from the copyrighted images.

17. Upon information and belief, Defendants also deceive unknowing consumers by using the JIMMY THE BULL Images without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for JIMMY THE BULL Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine JIMMY THE BULL Products.

18. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Upon information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A of the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive infringing operation, and to avoid being shut down.

19. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores and very likely are interrelated or work in concert to operate their businesses. For example, many of the Defendant Internet Stores have virtually identical layouts. In addition, many of the unauthorized JIMMY THE BULL Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the illegal products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

20. Further, illegal operators such as Defendants typically operate multiple credit card merchant accounts and third-party accounts, such as PayPal, Inc. accounts, (collectively "PayPal"), behind layers of payment gateways so that they can continue operation in spite of any enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore operators regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

21. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using infringing and counterfeit versions of the JIMMY THE BULL Images in connection with the unauthorized advertisement, distribution, offering for sale, and sale of illegal products into the United States and Illinois over the Internet. Each Defendant Internet Store

offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has offered to sell infringing products into the United States, including Illinois.

22. Defendants' use of the JIMMY THE BULL Images in connection with the advertising, distribution, offering for sale, and sale of infringing products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## COPYRIGHT INFRINGEMENT

23. Plaintiff repeats and incorporates by reference herein the allegations contained in the above paragraphs of this Complaint.

24. The JIMMY THE BULL Images have significant value and have been produced and created at considerable expense.

25. At all relevant times, Plaintiff has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted JIMMY THE BULL Images and derivative works. The JIMMY THE BULL Images are the subject of a valid Certificate of Copyright Registration, VA0002005670 issued by the Register of Copyrights. (Exhibit 1).

26. Each Defendant, without the permission or consent of the Plaintiff, has, and continues to sell unauthorized JIMMY THE BULL Products. Each Defendant has violated Plaintiff's exclusive rights of reproduction and distribution. Each Defendant's actions constitute infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 et seq.).

27. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of the Plaintiff.

28. As a result of each Defendant's infringement of Plaintiff's exclusive rights under copyrights, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504 and to his attorneys' fees and costs pursuant to 17 U.S.C. §505.

29. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyright and ordering that each Defendant destroy all unauthorized copies.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

30. Plaintiff repeats and incorporates by reference herein the allegations contained in the above paragraphs of this Complaint.

31. Defendants' promotion, marketing, offering for sale, and sale of infringing JIMMY THE BULL Products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' infringing products by Plaintiff.

32. By using the JIMMY THE BULL Images in connection with the sale of unauthorized products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized products.

33. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

34. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of his brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, et seq.)

35. Plaintiff repeats and incorporates by reference herein the allegations contained in the above paragraphs of this Complaint.

36. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their unauthorized products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine products, representing that their products have Plaintiff approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

37. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

38. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to his reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

13

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff pray for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the JIMMY THE BULL Images or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized JIMMY THE BULL Product or is not authorized by Plaintiff to be sold in connection with the JIMMY THE BULL Images;

   b. passing off, inducing, or enabling others to sell or pass off any product or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the JIMMY THE BULL copyright;

   d. further infringing the JIMMY THE BULL Images and damaging Plaintiff goodwill;

   e. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which directly use the JIMMY THE BULL Images or which are derived from Plaintiff's copyright in the JIMMY THE BULL Images;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as, but not limited to, eBay, Amazon, Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook,

YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo shall:

a. disable and cease providing services for any product listings through which Defendants engage in the sale of products not authorized by Plaintiff which bear the JIMMY THE BULL copyrighted works or which are derived from Plaintiff's copyright in the JIMMY THE BULL Images, including any product listings owned or operated by the Defendants listed on Schedule A;

f. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff which use the JIMMY THE BULL Images or which are derived from Plaintiff's copyright in the JIMMY THE BULL Images; and

3) For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered copyright pursuant to 17 U.S.C. §501; and b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

4) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the JIMMY THE BULL Images be increased by a sum not exceeding three times the amount thereof as provided by 17 U.S.C. §504;

5) In the alternative, that Plaintiff be award statutory damages pursuant to 17 U.S.C. §504 of $150,000 in this Court's discretion;

6) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

DATED: January 30, 2020	Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
111 West Jackson Boulevard, Suite 1700
Chicago, Illinois 60604
Telephone: 312-675-6079
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***